UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Gregory Gilreath, | : | Case No. 1:09-cv-628 |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| Plumbers, Pipefitters & Service | : | |
| Technicians Local 502, et al, | : | |
| | : | |
| Defendants. | : | |

**ORDER**

The Magistrate Judge has recommended that Plaintiff's claims
against the National Labor Relations Board be dismissed.  (Doc.
63)  In a separate Report, he also recommended dismissal of
Plaintiff's claims against Wilson-McShane Company.  (Doc. 64)
Plaintiff has objected to both of these Reports and their
recommendations.  (Docs. 71, 72, 78)

**FACTUAL BACKGROUND**

According to Plaintiff's complaint, Plaintiff worked for
Bechtel Construction Company ("BCC") and was a member of Local
502 of the Plumbers, Pipefitters & Service Technicians Union.  He
alleges that he discovered gross misconduct engaged in by
employees of BCC and Local 502, and he filed charges against both
entities with the National Labor Relations Board on January 3,
2009.  Those charges were eventually resolved by a settlement
between the parties.  Gilreath signed a settlement agreement

memorializing the terms of his settlement with BCC on March 1, 2009. (See Doc. 3, Exhibit 1) A separate agreement resolving the claims against Local 502 was executed on March 23, 2009. (Doc. 3, Exhibit 2) The following month, the Union asked him to pay over $700 in additional dues that were not deducted from his pay (which was apparently based upon a payment he received to resolve his claims against BCC). Gilreath refused to pay this amount, and complained that the amount of his settlement with BCC was confidential, and that disclosure of it voided his settlement agreement. He also stated that if Local 502 had done its job properly, he would not have filed the NLRB charges. Gilreath stated that BCC was responsible for all payments, deductions, taxes, Union contributions, etc., and asked for copies of various materials relevant to disputes between Gilreath and Local 502 personnel. (Doc. 3, Exhibit 4, April 18, 2009 letter from Gilreath to Local 502 Business Manager Roger Baum).

Gilreath was injured in a non-work related accident in late spring or early summer of 2009. He went to the offices of Wilson-McShane Corporation ("WMC"), the third party administrator for the Union's welfare funds, on July 19, 2009 to inquire about his disability benefits. Local 502's office was next door, and after he visited WMC he went to the Local's office, where he had a confrontation with several Local 502 members. As a result, Gilreath and Local 502 filed additional charges against each

other with the NLRB on July 21, 2009.  (Doc. 3, Exhibits 5 and 6)

Gilreath accused Local 502 of unlawful retaliation, making

threats of discharge, a failure to accept his dues, and bringing

false claims against him, among other allegations.  Local 502

complained that Gilreath refused to pay the required dues.  In a

July 24, 2009 letter to Gilreath, Local 502's attorney told him

to stay off Local 502 union hall property because of the July 21,

2009 incident; the letter states that Gilreath came to the office

tht day "and uttered abusive and threatening words to fund

employees and to union officials."  (Doc 3, Exhibit 7).

    Gilreath filed his original complaint in this case on August

28, 2009, seeking damages and injunctive relief.  (Doc. 3)  His

complaint includes a number of claims against Local 502 and BCC.

Count VII alleges that the NLRB breached its fiduciary duty to

him.  While his complaint refers to a WMC employee named Kate

Baker, no claims are specifically alleged against WMC.

Claims Against the NLRB

    The NLRB moved to dismiss all claims against it, arguing

that sovereign immunity bars Gilreath's claims.  (Doc. 18)

Gilreath opposed the motion (Doc. 20), contending that the Board

is not immune for its "grossly injurious actions" toward him.  In

his response, Gilreath also asked to amend or clarify his

complaint, to add a claim against the NLRB under the Federal Tort

Claims Act, 28 U.S.C. §1346.  The Board responded that the FTCA

does not provide a substantive cause of action, but permits a suit against the federal government if a breach of a relevant state law could result in liability. (Doc. 24) Even if such a claim might exist here, however, the Board argued that the discretionary function exemption of the FTCA applies to the Board's decisions and actions with respect to unfair labor practice proceedings.

The Magistrate Judge recommended that the Board's motion to dismiss be granted, and Gilreath's motion to amend be denied. The Court agrees with both of those recommendations. There is no federal statute or other federal authority supporting Gilreath's argument that a claim for "grossly injurious actions" is an exception to the bar of federal sovereign immunity. Setting aside Gilreath's inflammatory rhetoric (e.g., comparing the NLRB to the "American Taliban"), his responsive pleadings do not cite any legal authority supporting his claim. He argues that <u>Hess Mech. Corp. v. NLRB</u>, 112 F.3d 146 (4th Cir. 1997) supports his assertion that this Court may award money damages against the NLRB. In that case, the NLRB charged an employer with unlawfully firing an employee based on his union activity. The ALJ denied that charge, finding that the employee had been discharged for poor performance. The employer then sought an award of attorney's fees under the Equal Access to Justice Act, 5 U.S.C. §504, which the Board denied. The court reversed, finding that

the Board's complaint was not "substantially justified" under the EAJA statute, and that the employer was entitled to an award of fees based on that finding.  That case has no bearing on Gilreath's claims for money damages against the NLRB.

The Court also concludes that Gilreath's request to add a claim under the Federal Tort Claims Act should be denied, because such a claim would be futile.  Gilreath did not assert his claim against the United States as required by the statute.  But assuming he had done so, Gilreath has not satisfied the substantive administrative exhaustion requirement of 28 U.S.C. §2675(a), which is a mandatory prerequisite to an FTCA claim. Gilreath does not allege facts demonstrating that he presented a claim for damages in a sum certain to the NLRB, or that his claim has been finally denied by that agency.  See, e.g., <u>Glarner v. U.S. Dept. of Veterans Admin.</u>, 30 F.3d 697, 700 (6th Cir. 1994). The Magistrate Judge correctly concluded that Gilreath's proposed FTCA claim would be futile for that reason, as well as the fact that he has not identified any state law cause of action for a public employee's fiduciary breach or for "grossly injurious conduct" which he asserts was exhibited to him during the unfair labor practice charge proceedings.

In his objections (Doc. 72), aside from his inflammatory rhetoric which this Court will not address, Gilreath contends that his pro se pleadings should be liberally construed, and that

he has "mountains of evidence" to support his claim, including letters, emails, and phone calls to the NLRB. He submits a January 15, 2009 letter he wrote to the NLRB complaining about a local hearing officer, and the way he was treated by Cincinnati office personnel while he was filing his January 2009 charge. He argues that he should be permitted discovery in order to demonstrate the "grossly injurious conduct" of which he complains. The Court agrees that his complaint should be liberally construed in determining whether it states a plausible claim for relief over which this Court may exercise jurisdiction. But rhetoric and requests for discovery are not substitutes for factual allegations demonstrating that Gilreath has complied with the statutory requirements of submitting a specific claim for damages to the NLRB, and receiving a final denial of that claim from the Board. His January 2009 letter demanding that a different hearing officer be assigned to his case and lodging complaints about rude behavior by local NLRB staff, is not a presentation of a discrete claim for money damages and does not satisfy the exhaustion requirement. Without that showing, this Court may not exercise jurisdiction over the proposed FTCA claim against the NLRB.

Moreover, Gilreath's complaints about the way he was treated during the NLRB proceedings before he reached the settlements with Local 502 and BCC do not identify any state law that could

support a damages claim against the Board or any of its employees. Gilreath complains that his due process rights were violated, but federal constitutional tort claims are not cognizable in an FTCA action against a federal agency. See Federal Deposit Insurance Corp. v. Meyer, 510 U.S. 471, 477-78 (1994).

Claims Against Wilson-McShane

WMC moved for entry of judgment on the pleadings, noting that Gilreath's complaint did not assert a specific claim against the company. (Doc. 25) Gilreath responded that his claim for defamation was specifically alleged against WMC, but that he had inadvertently omitted WMC from Counts I through VII of his complaint. (Doc. 29) He also filed a motion seeking leave to file an amended and supplemental complaint. (Doc. 27) In that proposed pleading, he alleges that WMC is a party "associated with" various retaliatory acts taken by Local 502. (See ¶¶40-41 of proposed amended complaint) He also alleges that during a subsequent hearing on the charges against him, Local 502's attorney referred to statements made by a WMC employee, but refused to give Gilreath copies of those statements. (See ¶104) Count VII of the proposed amended complaint alleges civil conspiracy against Local 502, BCC and WMC (along with two newly-identified defendants). Count XI alleges that "all parties" (including WMC) have made defamatory "untrue spoken and written

allegations" against Gilreath.

WMC filed a combined reply in support of its Rule 12(c) motion and in opposition to Gilreath's motion for leave to amend (Doc. 35).  WMC argues that the proposed amendment simply paraphrases the original allegations, and again fails to allege a cognizable claim against WMC.  The Magistrate Judge agreed and recommended that WMC's motion for judgment on the pleadings be granted, and Gilreath's motion to amend be denied.  (Doc. 64)

WMC's motion is properly reviewed under the standard applicable to Rule 12(b)(6), which requires Gilreath to allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).  As noted above, the Court liberally construes the claims in light of Gilreath's pro se status.  Even most liberally construed, however, Gilreath's pleadings fail to plausibly allege claims for defamation or conspiracy against WMC.

A claim for defamation requires, at a minimum, allegations that the defendant (1) made a false and defamatory statement, (2) that was published by the defendant without privilege to a third party, (3) that was either defamatory per se or caused special harm to plaintiff.  See, e.g., Gosden v. Louis, 116 Ohio App.3d 195, 206 (Ohio App. 1996).   Gilreath does not allege a  false or defamatory statement was made by WMC or any of its employees. It is not sufficient to allege, as he does, that WMC was

"associated" with Local 502; he must allege that WMC itself published a false, defamatory statement about him. The only factual allegations about WMC in Gilreath's proposed amended complaint are that he spoke with a WMC representative at the WMC office for ten to twenty minutes on July 21, 2009 (Doc. 27, ¶¶40-41); that WMC's Kate Baker "refuted information" contained in the letter from Local 502's attorney to Gilreath (¶¶75-77); and that Local 502 and/or its counsel refused to give him copies of WMC employee statements during a hearing (¶104). These allegations simply do not support a plausible claim of defamation against WMC.

In a reply memorandum (Doc. 50), Gilreath submits copies of what are apparently WMC file notes concerning telephone calls Gilreath placed to WMC on June 29 and July 2, 2009, seeking information on an HRA claim and his short term disability check. The file notes state that Gilreath was "very irate," that he cursed at the individuals who answered the telephone, and that one WMC representative hung up on Gilreath when he started cursing. Gilreath does not identify any specific statements in these internal file notes that he contends are false, or are defamatory. Nor does he allege that these statements were "published" by WMC without a privilege to do so, or explain how he was harmed by the statements contained in these notes, assuming they were published.

The Magistrate Judge also recommended that Gilreath's proposed claim for civil conspiracy against WMC be dismissed for similar reasons. A civil conspiracy is a "malicious combination of two or more persons to injure another person or property, in a way not competent for one alone, resulting in actual damages." Kenty v. Transamerica Premium Ins. Co., 72 Ohio St.3d 415, 419 (Ohio 1995). To adequately plead a civil conspiracy, Gilreath must allege that WMC, together with at least one other person, (1) had a single plan, (2) the conspirators shared a general conspiratorial objective, and (3) an overt act was committed in furtherance of that conspiracy. See B & B Entertainment, Inc. v. Dunfee, 630 F.Supp.2d 870, 884 (S.D. Ohio 2009) (internal citations omitted). Gilreath's complaints do not satisfy these pleading requirements. He alleges in conclusory fashion that WMC "associated" itself with unlawful conduct committed by other Defendants. There are no facts pled that plausibly suggest that WMC agreed with any of the other Defendants, shared in any conspiratorial objectives of others, or that WMC or any of its employees committed any overt act to further an alleged conspiracy.

Gilreath's objections do not identify any facts that could support a conspiracy claim against WMC. Again, the Court will not consider Gilreath's rhetoric and unfounded accusations of unfairness by personnel of this Court. He argues that the

Magistrate Judge applied an unreasonable standard to his pro se pleadings, and exhibited prejudice in recommending that his complaint be dismissed.  The Court has carefully reviewed the proposed amended complaint and the exhibits Gilreath has submitted with his several responses and objections, and rejects his arguments. After de novo review of the record, this Court concludes that Gilreath has not alleged a plausible claim for civil conspiracy against WMC.

## CONCLUSION

For all of the foregoing reasons, the Court agrees with the recommendations of the Magistrate Judge with respect to Plaintiff's claims against the NLRB (Doc. 63) and Wilson-McShane Corporation (Doc. 64).  The NLRB's motion to dismiss (Doc. 18) is granted, and Plaintiff's claims against the NLRB are dismissed with prejudice.  Wilson-McShane's motion for judgment on the pleadings (Doc. 25) is granted, and Plaintiff's claims against Wilson-McShane are dismissed with prejudice.  Plaintiff's motion to amend his complaint (Doc. 27) is denied only with respect to proposed claims against Wilson-McShane Corporation.  The Reports concerning the claims against Local 502 and BCC (Docs. 65 and 66) will be addressed in separate future orders.

SO ORDERED.

DATED: March 31, 2011      s/Sandra S. Beckwith
                           Sandra S. Beckwith
                           Senior United States District Judge

-11-