UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Gregory Gilreath,  :  Case No. 1:09-cv-628
  :
    Plaintiff,  :
  :
vs.  :
  :
Plumbers, Pipefitters & Service  :
Technicians Local 502, et al,  :
  :
    Defendants.  :

**ORDER**

Before the Court are Plaintiff's objections to the Magistrate Judge's Report and Recommendation addressing Plaintiff's claims against Defendant Bechtel Construction Company ("Bechtel"). The Magistrate Judge recommended that the Court grant Bechtel's motion for judgment on the pleadings and partial summary judgment, and deny Plaintiff's motion for leave to amend his complaint with respect to his claims against Bechtel. (Doc. 66, Report and Recommendation) Plaintiff objects to both of these recommendations. (Doc. 82)

**FACTUAL BACKGROUND**

Plaintiff's complaint alleges that he worked for Bechtel and was a member of Local 502 of the Plumbers, Pipefitters & Service Technicians Union. Bechtel terminated his employment in August 2008, after Gilreath discovered what he alleged to be gross misconduct (including fraud, cover-ups, conspiracies, assaults,

illegal hiring, and OSHA violations) engaged in by employees of Bechtel and Local 502. He filed unfair labor practice charges against both entities with the National Labor Relations Board on January 3, 2009. Those charges were eventually resolved by settlements; Gilreath signed an agreement memorializing the terms of his settlement with Bechtel on March 1, 2009. (See Doc. 3, Exhibit 1) That agreement included Bechtel's payment of a certain amount of money to Gilreath. He executed a separate agreement resolving the claims against Local 502 on March 23, 2009. (Doc. 3, Exhibit 2)

The following month, the Union asked him to pay over $700 in additional dues based on the payment he received from Bechtel to settle his claim. Gilreath refused to pay that amount. In a letter to Local 502, he complained that his settlement with Bechtel was confidential, and that its disclosure voided his settlement agreement. Gilreath claimed that Bechtel was responsible for all "payments, deductions, taxes, Union contributions, etc.," and asked for copies of various materials that pertained to continuing disputes between Gilreath and Local 502 personnel. (See Doc. 3, Exhibit 4, April 18, 2009 letter from Gilreath to Local 502 Business Manager Roger Baum).

Gilreath's complaint in this case alleges many facts and events involving Gilreath and Local 502 that are not relevant to the claims against Bechtel. With respect to allegations

involving Bechtel, Gilreath alleges in paragraph 56 that Bechtel violated the confidentiality clause of his settlement agreement by disclosing the amount of the settlement to Local 502. He attaches as Exhibit 9 to the complaint a "Union Summary Report," which states the amount he received (that was apparently treated as back wages and from which taxes were withheld), and lists the various welfare fund contributions made by Bechtel on Gilreath's behalf. Paragraph 68 alleges that Bechtel, Local 502 and Wilson-McShane Company, the union's third-party benefits and funds administrator, denied Gilreath the opportunity to see his personnel records.

Gilreath's complaint, filed on August 28, 2009, seeks damages and injunctive relief on a number of different claims. His claims against Bechtel are for breach of contract (referring to a Bechtel handbook); a claim under the LMRA, 28 U.S.C. §185; breach of the confidentiality clause of his settlement agreement; assault; defamation; discrimination; and breach of fiduciary duty.

Bechtel answered the complaint, and then moved for judgment on the pleadings and for partial summary judgment. (Doc. 30) Bechtel argued that all claims except for breach of the confidentiality clause should be dismissed pursuant to Fed. R. Civ. Proc. 12(c), primarily because they are barred by the March 1 settlement agreement. Bechtel also argued that each of the

claims were deficient on several other grounds.  Bechtel argued it was entitled to summary judgment on the confidentiality claim, relying on the affidavits setting forth facts concerning Bechtel's disclosures of the settlement.  Bechtel contends that the evidence establishes that no disclosure was made to Local 502 or any other third-party, and that the disclosures made to Wilson-McShane and the NLRB were permitted under the agreement.

Gilreath filed a motion to amend his complaint.  (Doc. 27) With respect to Bechtel, the proposed amended complaint includes claims for retaliation; civil conspiracy; defamation; violation of the confidentiality clause; assault/hostile work environment; discrimination based on violation of his rights to treatment of his worker's compensation injury; and breach of fair representation.  Gilreath's proposed amended claim for breach of contract alleges that Bechtel's contractual obligations are set forth in manuals and handbooks, that Bechtel reached the NLRB settlement "in bad faith," and that "by stealth and malice" Bechtel has harmed him.  He alleges in the amended defamation claim that "all parties have alleged untrue spoken and written allegations" that have caused him harm.  The factual allegations include many of those contained in the original complaint. Additional allegations relating to Bechtel appear in paragraph 41, where Gilreath alleges that Bechtel was "associated with" various retaliatory actions taken by Local 502.

**DISCUSSION**

Motion for Judgment on the Pleadings

Bechtel's motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is properly reviewed under the standard applicable to motions brought under Rule 12(b)(6), which requires Gilreath to allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

The Court liberally construes Gilreath's pleadings in light of his pro se status. Even most liberally construed, however, Gilreath's claims contained in counts I, II, IV, V, VI and VII of his original complaint are barred by his execution of the settlement agreement that released any and all claims against Bechtel. Paragraph 3 of that agreement states:

> The amount provided in paragraph 1 is the full and complete amount to be paid to Gilreath and he shall be entitled to no other payments of any kind (either paid to him or on his behalf) as a result of any claims he has, had, or may have, whether against [Bechtel] or any affiliated entity. The parties acknowledge that this Agreement is in complete settlement of any and all disputes and claims between and among the parties (and including any [Bechtel] affiliated entity).

Gilreath signed the agreement on March 1, 2009, and there is nothing on or in that document suggesting that he did not understand its terms. He asserts that the NLRB knew about his various complaints and demands with respect to Bechtel prior to

the settlement, and that during the proceedings he had objected to behavior of various NLRB personnel.  Assuming all of Gilreath's allegations are true, he does not deny the fact that he signed the settlement agreement, which is plain and unambiguous in resolving all claims of any kind he had or may have had against Bechtel at the time he signed that agreement.  All of Gilreath's claims against Bechtel (save for his claim that Bechtel breached the confidentiality clause) are based upon his allegations of events or actions that took place while he worked for Bechtel, and prior to March 1, 2009 when he signed the agreement.

Gilreath contends that the release should be set aside based on fraud or mutual mistake.  In his objections to the Magistrate Judge's Report, he asserts that the NLRB used "strong arm tactics to compel and deceive Gilreath in the settlement language."  He does not allege facts about these purported tactics; but in any event, there is no ambiguity in the release clause of the agreement.  He contends that he told the NLRB that he did not want to waive a claim for punitive damages against Bechtel, and submits letters he wrote to NLRB expressing that position.  But these letters predate the settlement agreement.  Gilreath has not alleged any facts concerning any fraudulent conduct by Bechtel that might vitiate the settlement, and he must plead those facts with particularity, in accordance with Fed. R. Civ. Proc. 9(b),

in order to withstand Bechtel's motion. See, e.g., <u>Scotts Co. LLC v. Liberty Mut. Ins. Co.</u>, 606 F. Supp. 2d 722 (S.D. Ohio 2009), where plaintiff argued that a settlement agreement and release should be set aside based on fraudulent conduct by the released party, its insurance company. The district court rejected plaintiff's argument because plaintiff failed to specifically plead any facts demonstrating that the insurer engaged in any fraudulent conduct or concealment of facts that were material to the settlement. The court noted that a purpose of Fed. Rule of Civ. Proc. 9(b) "is to discourage fishing expeditions and strike suits which appear more likely to consume a defendant's resources than to reveal evidences of wrongdoing." <u>Id</u>. at 736 (internal citation omitted).

Gilreath also objects to the Magistrate Judge's conclusion that he has not come forward with facts establishing mutual mistake. A mutual mistake is a mistake of fact that is mutually shared by the contracting parties, that affects the material terms of the contract and frustrates the intent of the contracting parties. To be entitled to rescission of the agreement due to mutual mistake, Gilreath must also show that he was not negligent in failing to discover the mistake. See, e.g., <u>Reilley v. Richards</u>, 69 Ohio St.3d 352 (Ohio 1994). Gilreath may have been mistaken about the settlement, but he does not allege any <u>facts</u> suggesting that Bechtel shared in his mistake. And the

-7-

settlement agreement is plain and unambiguous on its face in releasing any and all claims Gilreath may have had, negating any suggestion that Bechtel shared his mistake or that he could not have discovered his mistake before signing the agreement.

Gilreath argues in his objections that the "mutual mistake" is that Bechtel did not "perform the required fringe benefit deductions," because Bechtel was required to withhold Union dues from his payment. (See Doc. 85 at p. 4) The settlement agreement states that Bechtel will withhold taxes, and will contribute on his behalf to applicable fringe benefit funds. It does not require or permit Bechtel to deduct Union dues. Without pleading some facts supporting the existence of a mutual mistake on this subject, Gilreath is not entitled to rescind his settlement agreement.

The Court agrees with the Magistrate Judge's conclusion that the terms of the March 1, 2009 settlement agreement bar Gilreath's claims alleged in Counts I, II, IV, V, VI, and VII of his complaint alleging breach of contract, an LMRA violation, assault, defamation, discrimination, and breach of fiduciary duty.

Motion for Partial Summary Judgment

Summary judgment is properly granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party opposing a properly supported summary judgment motion "'may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.'" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (quoting First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253 (1968)). The non-moving party must "present affirmative evidence to defeat a properly supported motion for summary judgment...," Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479-80 (6th Cir. 1989), and to designate specific facts in dispute. Anderson, 477 U.S. at 250. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industries Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The court construes the evidence presented in the light most favorable to the non-movant and draws all justifiable inferences in the non-movant's favor. United States v. Diebold Inc., 369 U.S. 654, 655 (1962).

Bechtel seeks summary judgment on Count III of the complaint, alleging that Bechtel breached the confidentiality clause of the settlement agreement. That clause states:

> The parties agree to keep the amount of this
> settlement confidential, with it to be
> disclosed by Gilreath only for the purpose of
> advising his immediate family and/or tax

-9-

>            advisors, by [Bechtel] only for legitimate
>            business purposes, and by any party as may be
>            required by law or as provided for in
>            paragraph 2.

(Doc. 3, Exhibit 1 at ¶5) Paragraph 2 permits the parties to provide a copy of the agreement to the NLRB to effectuate its approval of the withdrawal of Gilreath's charges.

Bechtel has submitted affidavits from attorney John Gaal, who represented Bechtel during Gilreath's NLRB case, and from Carol Jordan, a Bechtel employee responsible for payroll and benefit processing. (Doc. 31, Exhibit 1 and Exhibit C thereto) Gaal recites the facts concerning the issuance of Bechtel's checks representing the payments to Gilreath and payment of the fringe benefits required by the settlement agreement. Copies of the benefit check and statements were provided to Gilreath, and the benefit check was sent directly to the Funds, not to Local 502. Bechtel was thereafter notified by the NLRB that the Benefit Funds (administered by Wilson-McShane) would credit the payments only after Bechtel confirmed to the Union that dues had not been withheld from the payment to Gilreath. Gaal then sent a letter to Roger Baum at Local 502 on March 31, 2009, which stated in pertinent part that the settlement "did not allow the Company to withhold amounts that Mr. Gilreath normally would have had deducted from his paycheck, such as the deduction for the vacation benefit plan or his union dues." (Doc. 31, Exhibit G to Gaal Affidavit) The letter did not disclose the amount of the

settlement. In her affidavit, Ms. Jordan avers that the checks and associated benefit statements were sent to Wilson-McShane as the benefit funds manager, and not to Local 502.

In opposing Bechtel's motion, Gilreath argued that Local 502 obtained the information about his settlement, because in August 2009 Local 502 had a copy of the "Union Summary Report." (This report, attached to the Jordan affidavit, is routinely sent to the Fund by Bechtel when it is making contributions to the various welfare and benefit funds identified on that report.) Gilreath submits a document entitled "Hearing" on the charges brought by Local 502 against Gilreath in the summer of 2009, based on Gilreath's refusal to pay the dues Local 502 had demanded in April. According to the "Hearing" document, Roger Baum (Local 502's business manager) stated that the information supporting the charge was contained on the Union Summary Report. Baum said that whenever benefit contributions are paid by an employer and they do not "match what the computer says there should be on the report, it is rejected by the system and the local is notified of the matter." (Doc. 43, Exhibit 5)

At best, this document (which is not authenticated) could support a reasonable inference that Local 502 obtained the report from the Benefit Funds in order to establish whether or not dues had been deducted from the payment. It does not support Gilreath's conclusion that "it must have been Bechtel" that

informed Local 502 of the settlement amount.  The document, and Gilreath's arguments, do not create a **genuine** dispute of fact concerning Bechtel's alleged breach of the agreement.  Gilreath has not come forward with facts establishing or raising a reasonable inference that Bechtel disclosed the terms of the settlement in a manner prohibited by the settlement.

In his objections, Gilreath again engages in inappropriate, inflammatory accusations against the Magistrate Judges and this Court.  He states that he is not an attorney, and is not required to be aware of the "rules as such.  All that is required is simple knowledge of what Gilreath's intents are."  (Doc. 85 at p. 3)  This Court reviews Gilreath's pleadings in full recognition of his pro se status.  However, pro se litigants are not entitled to ignore the Federal Rules of Civil Procedure, the Federal Rules of Evidence, or legal precedent that is binding on this Court and which was cited by the Magistrate Judge.

He also complains that he has not been permitted discovery he believes he is entitled to.  The Supreme Court of the United States has held that if a complaint fails to allege facts plausibly supporting a claim for relief, a plaintiff is not entitled to any discovery.  <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1954 (2009).  And with regard to Bechtel's partial summary judgment motion, Gilreath did not submit an affidavit as required by Rule 56(f), explaining what facts he hoped to discover that

would be required to oppose that motion.  In his objections, Gilreath again fails to identify particular discovery that would be needed to oppose Bechtel's motion.  In view of the evidence submitted by Bechtel, which Gilreath does not dispute, the Court concludes that Bechtel is entitled to summary judgment on Count III of Gilreath's complaint.

Gilreath's Motion to Amend His Complaint

Leave to amend a complaint should be liberally granted, to further the goal of determining cases upon their merits.  Leave to amend may be denied, however, if the proposed amended claim would be futile.  Foman v. Davis, 371 U.S. 178, 182 (1962).  If the claim could not withstand a motion to dismiss, it is futile and leave to amend should be denied.  See, e.g., Miller v. Calhoun County, 408 F.3d 803, 817 (6th Cir. 2005).

The Magistrate Judge concluded that Gilreath's proposed amended complaint suffers from the same problems as his original complaint.  Leave to amend to re-plead claims that the Court has found to be barred by the settlement agreement would be futile.  Gilreath seeks to add new claims against Bechtel for breach of fair representation (Count XIII) and civil conspiracy (Count VII).  Count XIII is based on allegations of events and conduct that predate the March 2009 settlement agreement.  Even if an employer owes a duty of "fair representation" to an employee (and Gilreath cites no law creating such a duty), the claim would be

-13-

barred by the settlement.

The Magistrate Judge also concluded that Gilreath's proposed cause of action for civil conspiracy fails to state a plausible claim for relief, and that leave to amend should be denied.  A civil conspiracy is defined by Ohio law as a "malicious combination of two or more persons to injure another person or property, in a way not competent for one alone, resulting in actual damages."  Kenty v. Transamerica Premium Ins. Co., 72 Ohio St.3d 415, 419 (Ohio 1995).  To adequately plead a civil conspiracy, Gilreath must allege that Bechtel, together with at least one other person or entity, (1) had a single plan, (2) Bechtel shared a general conspiratorial objective with its co-conspirators, and (3) an overt act was committed in furtherance of that conspiracy.  See B & B Entertainment, Inc. v. Dunfee, 630 F.Supp.2d 870, 884 (S.D. Ohio 2009) (internal citations omitted).

Gilreath's proposed conspiracy claim does not satisfy these pleading requirements.  He alleges in conclusory fashion that Bechtel was "associated" with unlawful conduct committed by other Defendants, primarily Local 502.  There are no facts pled that plausibly suggest that Bechtel agreed with anyone to conspire to harm Gilreath, that Bechtel shared in any conspiratorial objectives, or that it or any of its employees committed any overt act to further an alleged conspiracy.  The Court will not address Gilreath's rhetoric and accusations of unfairness.  The

Court has carefully reviewed the proposed amended complaint and the exhibits Gilreath has submitted with his several responses and objections. The Court concludes that Gilreath's motion for leave to file his proposed amended complaint against Bechtel should be denied.

**CONCLUSION**

After de novo review of the record, and for all of the foregoing reasons, the Court agrees with the recommendations of the Magistrate Judge with respect to Plaintiff's claims against Bechtel Construction Company. (Doc. 66) Bechtel's motion to dismiss and for partial summary judgment (Doc. 30) is granted, and Plaintiff's claims against Bechtel are dismissed with prejudice. Plaintiff's motion to amend his complaint (Doc. 27) is denied with respect to the proposed claims against Bechtel.

SO ORDERED.

DATED: March 31, 2011   s/Sandra S. Beckwith
                        Sandra S. Beckwith
                        Senior United States District Judge